# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

NEW YORK LIFE INSURANCE     *
COMPANY,                    *
                            *
    Plaintiff,              *
                            *
    vs.                     *           CV 209-047
                            *
DIANNE SMOOT and THOMAS H.  *
SMOOT, III, individually and *
as Executor of the Estate of *
Thomas H. Smoot, II,        *
                            *
    Defendants.             *


## ORDER

New York Life Insurance Company filed the present interpleader action pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1335 after the company received conflicting claims from Dianne Smoot and Thomas H. Smoot, III – executor of the estate of Thomas H. Smoot, II – over deferred compensation and pension benefits payable by New York Life as a result of the death of Thomas H. Smoot, II.  In Smoot, III's Answer to New York Life's Complaint, Smoot, III alleges that Dianne Smoot waived any

rights or expectancy interests in the deferred compensation and pension benefits when she entered into a settlement agreement with Smoot, II incident to their divorce. (Dkt. No. 21.) Dianne Smoot avers that she has not released any claims to the subject assets. She filed this Motion for Partial Summary Judgment asking the Court to find, as a matter of law, that the settlement agreement did not operate to waive her interests in the deferred compensation and pension benefits. (Dkt. No. 29.)

For the following reasons, the Court **GRANTS** Dianne Smoot's Motion for Partial Summary Judgment. (Dkt. No. 29.)

**BACKGROUND**

Thomas H. Smoot, II and Dianne S. Smoot were married in the fall of 1990. During their marriage, Smoot, II worked as a general agent for New York Life Insurance Company. As an agent for the company, Smoot, II participated in three New York Life deferred compensation plans: the Agents Plan, the Accredited Investors Plan, and the District Agent Plan. Smoot, II also participated in New York Life's Progress Sharing Investment Plan, a pension benefit plan

2

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1001 et seq. All four plans were funded in part by commissions and compensation earned by Smoot, II during his marriage to Dianne Smoot. Smoot, II designated Dianne Smoot as either the sole beneficiary or a co-beneficiary on all four accounts.

Smoot, II filed for divorce in March of 2006. Prior to filing, the parties entered into a settlement agreement including the following language:

>    2.   DIVISION OF PROPERTY.
>
>    ...
>
>    (o) Except as otherwise specifically provided
> in this Agreement, Husband shall have sole
> ownership of that property titled in the Husband's
> name or which is the Husband's possession as of
> the date of the execution of this Agreement.
>
>    (p) Except as otherwise provided herein, the
> Wife waives any right that she may have to alimony
> and any claim that she may have otherwise through
> any property of the Husband.
>
>    3.   SETTLEMENT.
>
>    The parties hereto accept the terms and
> conditions of this Agreement in full settlement
> and satisfaction of any and all claims, demands,
> actions, or causes of action they may now have, or
> hereafter have or acquire, against the other for
> maintenance, alimony (both temporary and
> permanent), support, year's support, or any other
> claim against the other except, of course, the

>    obligations under the terms and provisions of this
>    Agreement.
>
>    ...
>
>    6.   MODIFICATION OR WAIVER.
>
>    Except as specifically provided herein, no
>    modification or waiver of the terms of this
>    Agreement shall be made except with the written
>    express consent of the other party, and each party
>    hereby waives any past, present, or future claim
>    or right which he may have against the other
>    party.

(Agreement, Dkt. No. 29, Ex. 2.) The settlement agreement was incorporated into a Final Judgment and Decree entered by the Superior Court of Glynn County on May 16, 2006.

Smoot, II had the right to change the beneficiary designations under the three deferred compensation plans and the Progress Sharing Investment Plan at any time.[1] In October of 2007, the beneficiary designations with respect to the Agents Plan and the Accredited Investors Plan were changed: Dianne Smoot, initially a co-beneficiary under

---

[1] Smoot, III argues that, pursuant to the Progress Sharing Investment Plan documents, Smoot, II would have been unable to change the beneficiary under the Plan without Dianne Smoot's consent. (Smoot, III Br. in Resp. 14.) However, the Plan's spousal consent requirement only applies while the owner of the account is married: "You may change your beneficiary designation whenever you chose, subject to the spousal consent requirement if you are married. If you are not married, you may designate anyone you wish as beneficiary for your Account." (Dkt. No. 52, Ex. 3, 38.) Thus, once divorced, there were no restrictions on Smoot, II's ability to change his beneficiary designation under this Plan. (See also Dkt. No. 52, Ex. 2, 15 ("If the Participant is legally separated . . . Spousal Consent shall be deemed to have been given.").)

4

each of these plans, was named the sole primary beneficiary.[2] The beneficiary designations with respect to the District Agent Plan and the Progress Sharing Investment Plan were never changed.

Smoot, II died on February 16, 2009. Subsequently, a dispute arose among the co-Defendants regarding ownership of the assets in the deferred compensation plans and the Progress Sharing Investment Plan. Dianne Smoot claims ownership as the designated beneficiary or co-beneficiary under each of the plans. Thomas H. Smoot, III, individually and as executor of Smoot, II's estate, argues that Dianne Smoot waived her rights and expectancy interests in any of the plans as a result of the 2006 settlement agreement between Dianne Smoot and Smoot, II. Dianne Smoot moves that she is entitled to partial summary judgment on the sole issue of whether the 2006 settlement agreement operates as a waiver of her expectancy rights and interests.

---

[2] The co-Defendants dispute the circumstances under which these changes were made. Thomas H. Smoot, III alleges that Dianne Smoot had access to the sub-agency portal used to change beneficiary designations under these plans, and that she used this access to name herself as the sole beneficiary without Smoot, II's knowledge or permission. (Smoot, III Br. in Resp. 4, 11.) Dianne Smoot denies these allegations. (Dianne Smoot Br. in Supp. 4 n.1.)

**DISCUSSION**

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Georgia case law requires that the meaning of a settlement agreement incorporated into a divorce degree be construed according to the usual rules of contract construction. Kruse v. Todd, 260 Ga. 63, 67, 389 S.E.2d

6

488, 491 (1990). If the agreement is clear and unambiguous, a reviewing court may not look beyond the text of the document itself to determine the intention of the parties. Id.

In Kruse, the Supreme Court of Georgia addressed competing claims to the proceeds of an Individual Retirement Account (IRA) and a life insurance policy. Dr. Todd, the owner of the IRA account and life insurance policy, designated his wife, Kruse, as beneficiary on both accounts. Id. at 63-64. The couple later divorced, but Todd failed to change the beneficiary designations. Id. at 64-65. When Todd died, his administratrix claimed the proceeds of the account and policy, arguing that the couple's divorce settlement agreement operated to release any rights that Kruse had as beneficiary of the IRA account or the life insurance policy. Id. at 64.

The Kruse court looked to the unambiguous language of the settlement agreement and found that, while the agreement did operate to release Kruse's designation as beneficiary of the IRA, it did not release her rights as beneficiary of the life insurance policy. Id. at 66, 69. The agreement provided, in part, that:

7

> Any stocks, bonds,. . . *IRA's or any other monies wherever located presently is [ sic] the sole and exclusive property of the designated depositor or named owner or recipient, and the other party shall have no interest therein.*
>
> . . .
>
> Except as otherwise expressly provided, *the parties shall and do mutually remise, release, and forever discharge each other from any and all actions, suits, claims, demands, and obligations whatsoever,* both in law and in equity, *which each of them ever had, now has, or may hereafter have against the other* upon or by reason of any matter, cause, or thing up to the date of the execution of this Agreement.

Id. at 65 (emphasis added) (internal citations omitted). The Kruse court found that this language "clearly and unambiguously expresse[d] the intent of the parties that Kruse release any interest in any IRA of which Dr. Todd was the designated depositor." Id. at 69. Any waiver of Kruse's expectancy interest as beneficiary of the life insurance policy, however, was not expressly contemplated by the agreement. Id. at 67.

The court also found that the parties' agreement to release any "claims . . . which each of them ever had, now has, or may hereafter have against the other" did not operate to waive Kruse's rights as beneficiary of the insurance policy. Id. at 65.

8

> Up to the date of execution of the settlement
> Kruse had no claim or right, in equity or in law,
> against Dr. Todd, to be named beneficiary of his
> life insurance policy, and Dr. Todd was under no
> legal obligation to maintain Kruse as beneficiary.
> Any right Kruse may have had to the insurance
> proceeds arose after Dr. Todd's death. Moreover,
> Kruse's claim to the proceeds at Dr. Todd's death
> was not against Dr. Todd but against [the company
> that issued the policy].

Id. at 67 (internal citation omitted). The Supreme Court of Georgia therefore reversed the trial court's denial of summary judgment to Kruse respecting the life insurance policy.

The Eleventh Circuit relied on the Kruse decision to resolve a similar issue in Maccabees Mutual Life Insurance Co. v. Morton. 941 F.2d 1181 (11th Cir. 1991). In that case, Charles Morton named his wife Dianne as beneficiary under his IRA account and life insurance policy. Id. at 1183. When the couple divorced, the parties entered into a separation agreement that contained the following provision:

> Except for the rights provided or reserved in this
> Agreement, the parties . . . do hereby mutually
> release, waive, surrender and assign to the other
> . . . *all claims, demands, accounts, powers of
> attorney and causes of action which either of them
> may have against the other.* . . .

9

Id. at 1184.  Charles died just over a year after the divorce, having never changed the beneficiary on his IRA or insurance policy.  Id. at 1183, 1185.  When Dianne attempted to collect the proceeds of the life insurance policy and IRA account, Charles's administratrix argued that Dianne had assigned her rights to the proceeds to Charles in the separation agreement.  Id. at 1183.  The Eleventh Circuit disagreed.

Citing Kruse, the court found that the unambiguous language of the parties' separation agreement could not be interpreted as a waiver of Dianne Morton's rights and interests as beneficiary of the IRA account and life insurance policy.  Id. at 1184-85.  The court reasoned that the IRA and insurance policy were contracts between Charles Morton and the issuing companies, and that those companies agreed to pay proceeds to the beneficiary, Dianne, upon Charles's death.  Dianne had no right to the proceeds of the account or policy while Charles was alive; when Charles died, Dianne only had claims against the issuing companies.  The court found that "[a]t no time did Dianne ever have a claim against Charles.  Therefore, the separation

agreement's waiver of claims 'against the other' cannot apply to Dianne's rights as a beneficiary." Id. at 1185.

Here, as in Kruse and Maccabees, the language of the settlement agreement between Smoot, II and Dianne Smoot is clear and unambiguous. The parties agreed to waive any claims or rights they may have "against the other party." (Agreement, Dkt. No. 29, Ex. 2.) While Smoot, II was alive, Dianne Smoot did not have a claim against her former husband for the proceeds of the deferred compensation plans or the Progress Sharing Investment Plan. Smoot, II could have changed the beneficiary designation under each of the accounts at any time following his divorce, but he did not. After Smoot, II died, Dianne Smoot only had claims against New York Life for the proceeds of these accounts. Thus, the Smoot's settlement agreement did not waive Dianne Smoot's expectancy interests as a beneficiary of the subject plans because *she never had any claims against her former husband* to waive. See Maccabees, 941 F.2d at 1185; Kruse, 260 Ga. at 67.

Smoot, III argues that Maccabees and Kruse are distinguishable. First, Smoot, III points to the Kruse court's holding that the settlement agreement in that case

11

was "sufficiently broad to include Kruse's expectancy interest in Dr. Todd's Merrill Lynch IRA." Kruse, 260 Ga. at 69. Smoot, III contends that the language in the Smoot agreement was similarly broad enough to encompass any expectancy interests that Dianne Smoot might have in the subject plans.

The Kruse court did not focus on the breadth of the settlement agreement's language, however, but on the parties' "clear[] and unambiguous[]" expression that Kruse release any interest in "[a]ny . . . IRA's." Id. at 69; see also Young v. Stump, 294 Ga. App. 351, 354, 669 S.E.2d 148, 151 (2008) (holding that parties' settlement agreement released wife's claims to former husband's IRA where agreement expressly stated that "Husband shall have all right, title, and equity in and to any retirement account which is presently titled in his name, or which was established for his benefit, *including but not limited to . . . IRAs*"). The court merely suggested that the language "the other party shall have no interest [in any IRAs]" was sufficiently broad to include expectancy interests as well as present interests. That the Kruse court's holding was based principally on the "clear[] and unambiguous[]"

12

expression of the parties' intent is evident from its finding that the agreement did not waive Kruse's interests in the life insurance policy. See id. at 67 ("[W]e find that the agreement expresses no intent that Kruse release her expectancy interest as a beneficiary of Dr. Todd's life insurance policy. . . . [T]he life insurance policy is not addressed by the language . . . of the settlement agreement.").

Second, Smoot, III suggests that Maccabees can be distinguished because the IRA and insurance policy at issue in that case were not marital property. Smoot, III argues that the plan accounts in the present case are marital property because they were funded in part by commissions and compensation earned by Smoot, II during the marriage. See Andrews v. Whitaker, 265 Ga. 76, 77, 453 S.E.2d 735, 736 (1995) (retirement benefits that constitute deferred compensation for services rendered during the term of employment and during the course of a marriage are subject to equitable division). Smoot, III argues that Dianne Smoot was entitled to an equitable portion of the funds in the plan accounts, but that she waived this claim when she signed the settlement agreement.

Smoot, III's argument fails to distinguish Maccabees, however, unless it can be assumed that the IRA and insurance policy at issue in that case were not funded by compensation earned during the course of the Mortons' marriage. Smoot, III is willing to make this supposition. (See Smoot, III Br. in Resp. 14 n.5 ("Presumably, the Maccabees IRA was not funded by marital assets.").) This Court, however, is not. The only background information that the Eleventh Circuit provides about the Morton IRA and insurance policy is that they were both opened during the marriage. Maccabees, 941 F.2d at 1183. Any conjecture as to how these assets were funded, and what bearing, if any, this information might have had on the Eleventh Circuit's holding is too speculative for this Court to say that Maccabees is clearly distinguishable from the present case.

Smoot, III also suggests that the accounts in the present case can be distinguished from the IRA in Maccabees because Smoot, II had a "present right to the funds [in the accounts], not a mere contractual right to have them paid out to someone on his death." (Smoot, III Br. in Resp. 13.) Assuming this is true, it still isn't a basis for distinction. Although IRA account owners are assessed a

14

penalty, early withdrawals are not prohibited. See 26 U.S.C. § 72(t); see also Kitt v. United States, 277 F.3d 1330, 1336 (Fed. Cir. 2002). Thus, the IRA account owner in Maccabees had just as much of a present right to that asset as Smoot, II may have had to the funds in his pension plan accounts.

Smoot, III also argues that if the Smoot settlement agreement is read in its entirety, it becomes clear that the parties did not intend for Dianne to remain a beneficiary of the plans. Smoot, III bases this conclusion on the principle that, in construing settlement agreements, "the whole contract should be looked to in arriving at the construction of any part." Young, 294 Ga. App. at 353. Smoot, III points out that the parties' agreement makes other provisions for Dianne Smoot in the division of marital property, including naming her as an irrevocable beneficiary of a $1 million life insurance policy. (See Agreement, Dkt. No. 29, Ex. 3.) If the parties had intended for Dianne Smoot to remain an irrevocable beneficiary of the subject plans, Smoot, III's argument continues, "they would have specifically said so, as they

15

did with regard to the life insurance policy." (Smoot, III Br. in Resp. 11.)

This argument ignores the fact that Dianne Smoot never claimed to be an irrevocable beneficiary of the deferred compensation plans or the Progress Sharing Investment Plan. As noted above, Dianne Smoot's designation as beneficiary under all of the plans was fully revocable. Smoot, II just failed to change the beneficiary designations. Thus, the parties' inclusion of a provision specifying Dianne Smoot as the irrevocable beneficiary of the life insurance policy is not inconsistent with the parties' exclusion of her designation as a revocable beneficiary under the subject plans.

Finally, Smoot, III asks this Court to deny Dianne Smoot's Motion pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) permits a court to deny a motion for summary judgment or order a continuance if the nonmovant shows by affidavit that it is unable to present facts essential to justify its opposition. Fed. R. Civ. P. 56(f). Smoot, III argues that he is unable to obtain the necessary documents and testimony needed to support his

opposition because Dianne Smoot's Motion was filed in the early phases of discovery.

Resolution of the issue presented by Dianne Smoot's Motion, however, does not require submission of any extrinsic evidence. The Court need only look to the clear and unambiguous language of the settlement agreement itself. See Kruse, 260 Ga. at 67 (citing Prince v. Prince, 147 Ga. App. 686, 688, 250 S.E.2d 21, 23 (1978)). The settlement agreement has already been entered into the record. (Dkt. No. 29, Ex. 2.) Moreover, Smoot, III had ample opportunity to conduct additional discovery during the pendency of Ms. Smoot's Motion for Partial Summary Judgment. (Dkt. No. 29.) The Court therefore declines to deny the instant Motion or otherwise order a continuance pursuant to Rule 56(f). See Wallace v. Brownwell Pontiac-GMC Co., Inc., 703 F.2d 525, 528 (11th Cir. 1983) (finding summary judgment appropriate over Rule 56(f) objection where resolution of motion involved merely a matter of contract construction).

In conclusion, the Court concludes from the unambiguous language of the Smoot's settlement agreement that Dianne Smoot did not waive her rights or expectancy interests in

the proceeds of the deferred compensation plans or the Progress Sharing Investment Plan. The Court therefore **GRANTS** Dianne Smoot's Motion for Partial Summary Judgment. (Dkt. No. 29.)

**CONCLUSION**

Dianne Smoot's Motion for Partial Summary Judgment is **GRANTED**. (Dkt. No. 29.)

**SO ORDERED,** this ___30th___ day of November, 2009.

_____
HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA